**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

_____

**KRISTEN A. CARPENTER,**

                                  **Plaintiff,**               **5:13-cv-859**
                                                               **(GLS)**

              **v.**

**CAROLYN COLVIN,**
Acting Commissioner of the Social
Security Administration,

                                  **Defendant.**
_____

**APPEARANCES:**                                **OF COUNSEL:**

**FOR THE PLAINTIFF:**
Iaconis Law Firm                                CHRISTOPHER D. THORPE,
501 Genesee Street                              ESQ.
Chittenango, NY 13037

**FOR THE DEFENDANT:**
HON. RICHARD S. HARTUNIAN                       GRAHAM MORRISON
United States Attorney                          Special Assistant U.S. Attorney
100 South Clinton Street
Syracuse, NY 13261

Steven P. Conte
Regional Chief Counsel
Social Security Administration
Office of General Counsel, Region II
26 Federal Plaza, Room 3904
New York, NY 10278

**Gary L. Sharpe**
**Chief Judge**

## MEMORANDUM-DECISION AND ORDER

### I. Introduction

Plaintiff Kristen A. Carpenter challenges the Commissioner of Social Security's denial of Supplemental Security Income (SSI), seeking judicial review under 42 U.S.C. § 1383(c)(3). (Compl., Dkt. No. 1.) After reviewing the administrative record and carefully considering Carpenter's arguments, the Commissioner's decision is reversed and remanded.

### II. Background

On May 29, 2009, Carpenter filed an application for SSI under the Social Security Act ("the Act"), alleging disability since January 1, 2002. (Tr.[1] at 102, 270-72.) After her application was denied, (*id.* at 130-33), Carpenter requested a hearing before an Administrative Law Judge (ALJ), which was held on February 4, 2011, (*id.* at 52-82, 134-36). On March 7, 2011, the ALJ issued an unfavorable decision denying the requested benefits. (*Id.* at 103-19.) At Carpenter's request, the Appeals Council remanded the decision to the ALJ to consider new evidence submitted to the Appeals Council, including the opinion of Carpenter's treating psychiatrist and third-party statements, as well as any additional evidence

---

[1] Page references preceded by "Tr." are to the Administrative Transcript. (Dkt. No. 12.)

submitted by Carpenter, and obtain testimony from a vocational expert (VE).  (*Id.* at 127-29, 196-200.)[2]  A second administrative hearing was held on November 5, 2012.  (*Id.* at 83-101.)  Carpenter did not attend the hearing on November 5, 2012, but her counsel appeared and continued to represent her during the hearing, at which VE testimony was taken.  (*Id.*)  On November 29, 2012, the ALJ issued an unfavorable decision again denying the benefits.  (*Id.* at 18-42.)  That decision became the final decision of the Commissioner when the Appeals Council denied Carpenter's request for review.  (*Id*. at 1-5.)

Carpenter commenced the present action by filing her complaint on July 19, 2013 wherein she sought review of the Commissioner's determination.  (Compl.)  The Commissioner filed an answer and a certified copy of the administrative transcript.  (Dkt. Nos. 11, 12.)  Each party, seeking judgment on the pleadings, filed a brief.  (Dkt. Nos. 17, 18.)

### III.  Contentions

Carpenter contends that the Commissioner's decision is tainted by legal error and is not supported by substantial evidence.  (Dkt. No. 17 at 4-

---

[2] The Appeals Council also instructed the ALJ to consolidate Carpenter's May 2009 claim with her subsequent application for SSI, filed while her appeal of the ALJ's unfavorable decision was pending.  (Tr. at 129, 277-85.)

24.)  Specifically, Carpenter claims that the ALJ: (1) denied her due process by failing to adjourn the November 5, 2012 hearing despite her timely request; (2) disregarded the Appeals Council's order on remand; (3) failed to properly evaluate "the limiting effects" of her "severe conditions"; (4) improperly applied the treating physician rule; (5) was insufficiently "familiar with [her] file so as to be able to properly provide accurate hypothetical questions" at the November 2012 hearing; and (6) substituted his own opinion for that of a qualified expert.  (*Id.*)  The Commissioner counters that the appropriate legal standards were used by the ALJ and his decision is also supported by substantial evidence.  (Dkt. No. 18 at 5-16.)

## IV.  Facts

The court adopts the parties' undisputed factual recitations.  (Dkt. No. 17, Attach. 1 at 2-10; Dkt. No. 18 at 2.)

## V.  Standard of Review

The standard for reviewing the Commissioner's final decision under 42 U.S.C. § 405(g)[3] is well established and will not be repeated here.  For a full discussion of the standard and the five-step process by which the

---

[3] 42 U.S.C. § 1383(c)(3) renders section 405(g) applicable to judicial review of SSI claims.

Commissioner evaluates whether a claimant is disabled under the Act, the court refers the parties to its previous decision in *Christiana v. Comm'r of Soc. Sec. Admin.*, No. 1:05-CV-932, 2008 WL 759076, at *1-2 (N.D.N.Y. Mar. 19, 2008).

## VI.  Discussion

### A.  Due Process

Carpenter first contends that the ALJ denied her due process by failing to postpone the May 5, 2012 hearing, as requested by her counsel. (Dkt. No. 17 at 4-10.)  Carpenter argues that, by failing to take her testimony, the ALJ failed to fulfill his duty to develop the record, and that this requires remand because she had a right to testify and present evidence on her second application for SSI.  (*Id.* at 7-8.)  The court disagrees.

The Fifth Amendment provides that no person will "be deprived of life, liberty or property without due process of law."  U.S. Const. amend. V.  A claim of entitlement to social security benefits triggers Due Process Clause protections.  *See Mathews v. Eldridge*, 424 U.S. 319, 332-33 (1976). However, because Congress gave the Commissioner much discretion to deal with the millions of decisions she must make, what constitutes

adequate due process for these hearings differs from that applied in judicial trials. *See Bush v. Shalala*, 94 F.3d 40, 46 (2d Cir. 1996). In the context of an administrative social security hearing, due process does not require "full-blown adversarial hearing[s]." *Id.* Instead, administrative hearings are to be "informal," "liberal," and "not strict in tone and operation." *Id.* (internal quotation marks and citation omitted). Their overall conduct ultimately rests in the ALJ's discretion, and the evidentiary rules do not apply. *See* 42 U.S.C. § 405(b)(1); *Richardson v. Perales*, 402 U.S. 389, 400-01 (1971).

In arguing that the Due Process Clause was not offended here, the Commissioner relies on the Hearings, Appeals and Litigation Law Manual ("HALLEX"), an internal Social Security Administration procedural manual, which provides that, if an appointed representative appears at a scheduled hearing without the claimant and continues to represent the claimant during the hearing, "the ALJ may choose to proceed with the hearing, accepting the testimony of the witness(es) and allowing the appointed representative to question the witness(es) and make arguments on the claimant's behalf." HALLEX I-2-4-25(D)(2)(b); (Dkt. No. 18 at 5-7.) HALLEX further instructs the ALJ to send a "Request to Show Cause for Failure to Appear . . . to the claimant to ask why he or she did not appear at the scheduled hearing and

whether a supplemental hearing should be held." *Id.* It does not appear that the ALJ issued such a request in this case, however, the ALJ considered the reasons given by Carpenter's counsel for her failure to appear, and determined that good cause did not exist for Carpenter's absence. (Tr. at 22-23, 85-87.)

Under HALLEX, good cause for failing to appear at a scheduled hearing exists, as relevant here, when an unforeseeable event occurred that did not provide the claimant or the appointed representative enough time to notify the ALJ and request a postponement before the scheduled hearing. *See* HALLEX I-2-4-25(C)(1)(b). Further, the ALJ must consider any "physical, mental, educational, or linguistic limitations that may have prevented the claimant from appearing at the scheduled time and place of the hearing, akin to the requirements for consideration of good cause for late filing" in 20 C.F.R. § 416.1411. HALLEX I-2-4-25(B).

In this case, the record supports the ALJ's conclusion that Carpenter was not entitled to a supplemental hearing because she failed to establish good cause for failing to appear. At the administrative hearing, Carpenter's counsel informed the ALJ that he had not been in contact with Carpenter until a week before the hearing, Carpenter had moved without informing

her counsel or the Social Security Administration, and Carpenter was unable to attend the hearing due to a lack of transportation.  (Tr. at 85-86.)[4] The ALJ reasoned that Carpenter had an obligation to provide the Social Security Administration with a current address, there was no assurance that Carpenter could attend a postponed hearing, and Carpenter had fully testified at the first hearing.  (*Id.* at 22.)  While the court considers Carpenter's mental limitations in determining good cause, Carpenter does not indicate that she did not attend due to her mental illness issues. Instead, she reported that she could not arrange transportation.  (Dkt. No. 17, Attach. 1 at 14.)  Notably, Carpenter fails to show that the presentation of her case would have improved if the ALJ issued a Notice to Show Cause and she received a supplemental hearing.  (*See generally* Dkt. No. 17 at 9.)  Although she argues generally that an adjournment would have provided her "the opportunity to update the ALJ on the progress of her medical impairments," (*id.*), Carpenter's counsel did not request that the administrative record be kept open for the submission of updated medical evidence, nor did Carpenter submit any such evidence to the Appeals

---

[4] On November 2, 2012, the Friday before the administrative hearing, Carpenter's counsel contacted the ALJ's office "late in the afternoon," and indicated that Carpenter could not attend the hearing on Monday "due to the lack of a motor vehicle, lack of someone to bring her, and the distance of her residence from the hearing site."  (Dkt. No. 17, Attach. 1 at 14-15.)

Council.  (*See generally* Tr. at 4, 85-87, 100-01.)  Ultimately, the court is unpersuaded by Carpenter's arguments and concludes that the process available to her was sufficient under the circumstances.

## B.     Appeals Council Order

Next, Carpenter claims that the ALJ disregarded the Appeals Council's order on remand by failing to permit her to testify.  (Dkt. No. 17 at 11); *see* 20 C.F.R. § 416.1477(B) ("The administrative law judge shall take any action that is ordered by the Appeals Council and may take any additional action that is not inconsistent with the Appeals Council's remand order.").  However, contrary to Carpenter's contention, the Appeals Council did not order the taking of Carpenter's testimony; instead, it directed the ALJ to consider the evidence submitted in connection with Carpenter's subsequent application for SSI and obtain additional evidence concerning Carpenter's mental impairments, "if necessary."  (Tr. at 128.)  Thus, it is clear that the Appeals Council afforded the ALJ discretion to determine whether additional evidence, including testimony, was necessary, and Carpenter's argument is without merit.

## C.     Credibility Determination

Next, Carpenter argues that the ALJ failed to properly determine the

limiting effects of her severe conditions.  (Dkt. No. 17 at 12-17.)  Although imprecisely stated, the essence of Carpenter's argument is that the ALJ's credibility finding is unsupported by substantial evidence because the ALJ failed to properly consider her subjective complaints as well as the third-party function reports of record.  (*Id.*)

Once the ALJ determines that the claimant suffers from a "medically determinable impairment[] that could reasonably be expected to produce the [symptoms] alleged," he "must evaluate the intensity and persistence of those symptoms considering all of the available evidence; and, to the extent that the claimant's [subjective] contentions are not substantiated by the objective medical evidence, the ALJ must engage in a credibility inquiry."  *Meadors v. Astrue*, 370 F. App'x 179, 183 (2d Cir. 2010) (internal quotation marks and citations omitted).  In performing this analysis, the ALJ "must consider the entire case record and give specific reasons for the weight given to the [claimant's] statements."  SSR 96-7p, 61 Fed. Reg. 34,483, 34,485 (July 2, 1996).  Specifically, in addition to the objective medical evidence, the ALJ must consider the following factors: "1) daily activities; 2) location, duration, frequency and intensity of any symptoms; 3) precipitating and aggravating factors; 4) type, dosage, effectiveness, and

side effects of any medications taken; 5) other treatment received; and 6) other measures taken to relieve symptoms." *F.S. v. Astrue*, No. 1:10-CV-444, 2012 WL 514944, at *19 (N.D.N.Y. Feb. 15, 2012) (citing 20 C.F.R. § 416.929(c)(3)(i)-(vi)).

Here, the ALJ determined that Carpenter's "statements concerning the intensity, persistence and limiting effects of [her] symptoms [were] not entirely credible." (Tr. at 29.) In making this determination, the ALJ considered Carpenter's reported activities of daily living, her treatment records, her failure to comply with prescribed treatment, and the medical opinions of evidence. (*Id.* at 29-31.) In particular, the ALJ noted that Carpenter had regular visitation with her son, regularly attended group therapy sessions, reported improvement when compliant with her medication, often did not take her medication or attend scheduled therapy sessions, and complained of problems in the home that were transitory, including an abusive boyfriend. (*Id.*)

As Carpenter points out, the ALJ failed to consider that she lost custody of her son due to her inability to care for him after his birth. (Dkt. No. 17 at 13; Tr. at 712-13.) Further, according to Carpenter, the ALJ should have considered whether Carpenter's failure to take prescribed

medications and remember appointments was at all attributable to the nature of her mental impairments.  (Dkt. No. 17 at 14); *see Belen v. Astrue*, No. 08 Civ. 10303, 2011 WL 2748687, at *13 n.13 (S.D.N.Y. July 12, 2011) ("When a [claimant] refuses to follow a treatment regimen, the 'refusal . . . must be reasonable,' but the 'reasonable man' standard which is normally used in determining justifiable cause for refusal [] is 'clearly not applicable' to those persons who, because of mental impairments, are not 'reasonable.'" (quoting *Benedict v. Heckler*, 593 F. Supp. 755, 761 (E.D.N.Y. 1984)); *Frankhauser v. Barnhart*, 403 F. Supp. 2d 261, 278 (W.D.N.Y. 2005) ("The ALJ has an obligation to take the claimant's mental limitations into account in determining whether . . . a failure [to fully comply with prescribed treatment] truly reflects an improvement in h[er] condition." (internal quotation marks and citation omitted)).

Finally, Carpenter complains that the ALJ failed to explain his reasons for discounting the third-party function reports completed by Renee Damon, Carpenter's intensive case manager, and Jean Ryan Preston, the grandmother of one of Carpenter's children.  (Dkt. No. 17 at 13.)  Their opinions suggest that Carpenter suffers limitations due to social anxiety, struggles with daily tasks, and demonstrates difficulties dealing

12

with stress and maintaining concentration.  (Tr. at 407-22.)  Although they are not medical opinions, "[o]pinions from 'non-medical sources' who have seen the [claimant] in their professional capacity should be evaluated by using the applicable factors" in 20 C.F.R. § 416.927(d).  SSR 06-03p, 71 Fed. Reg. 45,593, 45,596 (Aug. 9, 2006).  Further, the ALJ "generally should explain the weight given to opinions from . . . 'other sources,' or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the [ALJ]'s reasoning, when such opinions may have an effect on the outcome of the case."  *Id.*

Although in some instances the ALJ's credibility determination might suffice, based on Carpenter's treatment history, diagnoses, and the opinions of her treating and examining sources, the ALJ should have more thoroughly considered Carpenter's subjective complaints and the opinions of Damon and Preston.  *See infra* Part VI.D-E.  Thus, on remand, the ALJ should provide specific reasons, which are supported by the evidence of record, for the weight given to their statements, and if, necessary, obtain expert opinion regarding Carpenter's functional capabilities.

**D.    Treating Physician Rule**

Carpenter contends that the ALJ erred in weighing the opinion of treating physician assistant Amintha Selvarajah and treating psychiatrist Ahmed Raslaan Nizar that, due to bipolar disorder and postpartum depression, Carpenter could not satisfactorily remember work like procedures, maintain regular attendance, complete a normal workday and workweek, perform at a consistent pace, and deal with normal work stress. (Dkt. No. 17 at 17-21; Tr. at 845-56.)  The court agrees that remand is required here.

Controlling weight will be given to a treating source's opinion on the nature and severity of a claimant's impairments where it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence."  20 C.F.R. § 416.927(c)(2); *see Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004). When a treating source's opinion is given less than controlling weight, the ALJ is required to consider the following factors: the length, nature and extent of the treatment relationship; the frequency of examination; evidentiary support offered; consistency with the record as a whole; and specialization of the examiner.  *See* 20 C.F.R. § 416.927(c)(2)-(6).  The ALJ must provide "'good reasons' for the weight given to the treating

source's opinion." *Petrie v. Astrue*, 412 F. App'x 401, 407 (2d Cir. 2011) (citations omitted). "Nevertheless, where the evidence of record permits [the court] to glean the rationale of an ALJ's decision," it is not necessary that the ALJ "have mentioned every item of testimony presented to him or have explained why he considered particular evidence unpersuasive or insufficient to lead him to a conclusion of disability." *Id.* (internal quotation marks and citation omitted).

Here, the ALJ gave "some weight" to the February 2011 opinion of physician assistant Selvarajah, which was adopted by Dr. Nizar. (Tr. at 30-31.) Selvarajah completed a mental impairment questionnaire and opined that Carpenter was "unable to meet competitive standards" in several areas[5] and "seriously limited, but not precluded" in several others.[6] (*Id.* at 847.) The questionnaire defined "unable to meet competitive standards" as the inability to perform an activity "independently, appropriately, effectively

---

[5] Selvarajah found that Carpenter was unable to meet competitive standards in the following activities: (1) remembering work-like procedures; (2) maintaining regular attendance and being punctual within customary, usually strict tolerances; (3) completing a normal workday and workweek without interruptions from psychologically based symptoms; (4) performing at a consistent pace without an unreasonable number and length of rest periods; and (5) dealing with normal work stress. (Tr. at 847.)

[6] Selvarajah found that Carpenter was seriously limited, but not precluded from understanding, remembering, and carrying out very short and simple instructions; sustaining an ordinary routine, making simple work-related decisions, asking simple questions or for assistance, and responding appropriately to changes in a routine work setting. (Tr. at 847.)

and on a sustained basis in a regular work setting." (*Id.* at 846.)  In

addition, "seriously limited, but not precluded" was defined as an ability that

"is seriously limited and less than satisfactory, but not precluded.  This is a

substantial loss of ability to perform the work-related activity." (*Id.*)

Selvarajah also indicated that Carpenter's limitations in the area of

concentration, persistence, and pace were marked, meaning that several

activities or functions were impaired or one activity or function was

impaired, but "the degree of limitation [was] such as to seriously interfere

with the ability to function independently, appropriately, effectively, and on

a sustained basis.  (*Id.* at 849.)

The ALJ explained that this opinion was not given controlling weight

because "many of the functional limitations stated appear no more than

vocational assessments beyond the area of expertise of both Ms.

Selvarajah and Dr. Nizar." (*Id.* at 31.)  Indeed, at the administrative

hearing, the ALJ stated that "[t]he problem is that those medical source

statements don't define competitive standards . . . sometimes those

standards differ for different jobs." (*Id.* at 97.)  Further, the ALJ noted that

Carpenter was suffering from postpartum depression at the time that the

opinion was rendered.  (*Id*. at 31.)  According to the ALJ, the fact that

Selvarajah indicated on the questionnaire that Carpenter's postpartum depression caused diminished interests, decreased concentration, and lack of energy, "necessarily suggests that [Carpenter's] functioning was better prior to the delivery of her child and would have improved again with resolution of the post-partum depression." (*Id.*) The ALJ also explained that treatment notes indicate that, when Carpenter left her abusive boyfriend, she became better. (*Id.*)

On the whole, the ALJ's reasoning is flawed. On the questionnaire, Selvarajah was asked to evaluate the degree of Carpenter's mental abilities on the following five-step scale: (1) unlimited or very good; (2) limited but satisfactory; (3) seriously limited, but not precluded; (4) unable to meet competitive standards; (5) no useful ability to function. (*Id.* at 847-48.) The definition provided for "unable to meet competitive standards" is comparative to that of a "marked" limitation under the regulations. *Compare* 20 C.F.R. pt. 404, subpart P, app. 1, § 12.00(C) (defining a "marked" limitation as one where "the degree of limitation is such as to seriously interfere with the ability to function independently, appropriately, effectively, and on a sustained basis"), *with* Tr. at 846. Under the regulations, medical sources, including doctors and physician assistants,

may provide evidence of how a claimant's impairments affect their ability to work.  *See* 20 C.F.R. § 416.913(a), (d).  Thus, these treating professionals are routinely tasked with rendering judgments concerning competitive standards.  *See Mardorf v. Astrue*, 2012 WL 292311, at *2 (D. Me. Jan. 30, 2012).  To that end, medical questionnaires containing such terminology are commonly used and accepted in social security cases throughout the Second Circuit.  *See generally Rivera v. Colvin*, No. 11CIV7469-LTS-DF, 2014 WL 3732317 (S.D.N.Y. July 28, 2014); *Hidalgo v. Colvin*, No. 12CV9009-LTS-SN, 2014 WL 2884018 (S.D.N.Y. June 25, 2014); *Nicholson v. Colvin*, No. 5:13-cv-00027, 2014 WL 991827 (N.D.N.Y. Mar. 13, 2014); *Dowling v. Colvin*, No. 5:12-CV-1181, 2013 WL 6800207 (N.D.N.Y. Dec. 20, 2013).

Further, in addition to postpartum depression, which the ALJ concluded resulted in a temporary worsening of Carpenter's condition, Selvarajah indicated that Carpenter suffered from bipolar disorder, which caused depression, crying spells, and agitation.  (Tr. at 847.)  Moreover, Selvarajah reported that Carpenter's Global Assessment of Functioning

(GAF) score was fifty, which was also her highest score in the past year.[7]

(*Id.* at 845.)  This is consistent with Carpenter's GAF scores throughout much of the record, which indicated a serious impairment in functioning.[8] Thus, the ALJ's conclusion that Carpenter's functioning was better prior to the delivery of her child and would have improved again with resolution of her postpartum depression, is not supported by the opinion of Selvarajah and Dr. Nizar.

Because the ALJ erred in his analysis of the opinion of Carpenter's treating psychiatrist, the court agrees with Carpenter that the matter should be remanded to the Commissioner for a reevaluation of this opinion.  (Dkt. No. 17 at 17-21.)  If necessary, the ALJ should seek clarification from Carpenter's treating sources as to the nature and duration of Carpenter's

_____

[7] The GAF Scale "ranks psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." *Pollard v. Halter*, 377 F.3d 183, 186 n.1 (2d Cir. 2004).  A score in the range of forty-one to fifty indicates "'[s]erious symptoms (*e.g.,* suicidal ideation, severe obsessional rituals, frequent shoplifting) [or] any serious impairment in social, occupational, or school functioning (*e.g.,* no friends, unable to keep a job).'"  *Zabala v. Astrue*, 595 F. 3d. 402, 406 n.2 (2d Cir. 2010) (quoting Diagnostic and Statistical Manual of Mental Disorders 34 (4th ed., Text Rev. 2000)).

[8] In June 2009, Carpenter was assigned a GAF score of forty,(Tr. at 652), indicating "some impairment in reality testing or communication (*e.g.,* speech is at times illogical, obscure, or irrelevant) [or] major impairment in several areas, such as work or school, family relations, judgment, thinking or mood (*e.g.,* depressed man avoids friends, neglects family, and is unable to work)." *Prabhakar v. Life Ins. Co. of N. Am.*, No. 09-CV-05530, 2013 WL 4458728, at *4 n.11 (E.D.N.Y. Aug.16, 2013) (internal quotation marks and citation omitted).  Thereafter, Carpenter was assigned scores ranging from forty to fifty.  (Tr. at 716, 770, 795, 840, 857, 970.)

functional limitations.

**E.    Weighing Opinions of Consulting Examiners**

Carpenter also contends that the ALJ improperly substituted his own judgment for that of competent medical opinion, when he discounted the opinion of consulting examiner Jeanne Shapiro based on the results of her examination.  (Dkt. No. 17 at 23-24.)  Specifically, Dr. Shapiro's mental status examination revealed adequate social skills, appropriate eye contact, coherent thought processes, and intact attention and concentration.  (Tr. at 674.)  However, Carpenter's mood was anxious and depressed, she was tense, apprehensive, sad, and tearful, and her insight and judgment were poor.  (*Id.* at 674-75.)  Dr. Shapiro opined that Carpenter may have difficulty understanding and carrying out some instructions and directions due to memory and concentration deficits as well as cognitive deficits.  (*Id.* at 675.)  The ALJ discounted this portion of Dr. Shapiro's opinion because her examination did not reveal memory or attention deficits, and the record does not reflect any cognitive deficits.  (*Id.* at 30.)  As the regulations provide that "[t]he more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight [the ALJ] will give that opinion,"

the ALJ did not err in considering the examination findings of Dr. Shapiro when evaluating her opinion.  20 C.F.R. § 416.927(c)(3).

However, Dr. Shapiro further opined that Carpenter may have difficulty attending work or maintaining a schedule "due to lack of motivation and lethargy as well as panic attacks," and concluded that she does not appropriately manage stress.  (Tr. at 675.)  According to Dr. Shapiro, Carpenter suffers marked to extreme restrictions in her ability to interact with the public, supervisors, and co-workers as well as respond to usual work situations and changes in a routine work setting.  (*Id.* at 678.)  The ALJ concluded that "[w]hile [Carpenter] may lack motivation to perform work-related mental activities, the results of Dr. Shapiro's evaluation do not suggest that [she] is unable to do so."  Considering the opinion of Selvarajah and Dr. Nizar that Carpenter could not meet competitive standards in activities such as maintaining regular attendance and completing a normal workday and workweek, and was seriously limited in her ability to respond appropriately to changes in a routine work setting, on remand, the ALJ should reevaluate those portions of Dr. Shapiro's opinions as well.  (Tr. at 847); *see* 20 C.F.R. § 416.927(c)(4).

## F.    Remaining Findings and Conclusions

Because Carpenter's remaining contentions, (Dkt. No. 17 at 21-23), may be impacted by the subsequent proceedings directed by this Order, it would be premature of the court to address them at this juncture.

## VII.  Conclusion

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that the decision of the Commissioner is **REVERSED** and **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) for proceedings consistent with this Memorandum-Decision and Order; and it is further

**ORDERED** that the Clerk close this case and provide a copy of this Memorandum-Decision and Order to the parties.

**IT IS SO ORDERED.**

September 16, 2014
Albany, New York

Gary L. Sharpe
Chief Judge
U.S. District Court